UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEFFREY TONEY,<br><br>          Plaintiff,<br><br>   v.<br><br>THE CLOROX COMPANY,<br><br>          Defendant. | CASE NO. 3:22-cv-05730-BHS<br><br>ORDER |

This matter is before the Court on Defendant the Clorox Company's motion for summary judgment, Dkt. 31, and Plaintiff Jeffrey Toney's motion for partial summary judgment, Dkt. 32. Toney was employed at Clorox as a "customer team leader," responsible for selling certain Clorox products to Costco. In 2021, Clorox underwent a reorganization and redefined the responsibilities of this role. Clorox determined that Toney was no longer qualified to be a customer team leader and discharged him. Toney is a white male who was 63 years old when he was discharged. Toney claims that Clorox discharged him because of his race, sex, and age in violation of the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW. Because Toney presents no evidence indicating that Clorox considered his race, sex, or age in discharging him,

Clorox's motion for summary judgment is granted. Toney's motion for partial summary judgment is denied as moot.

## I. BACKGROUND

In 2011, Clorox hired Toney as a salesperson responsible for selling products to Walmart. Dkt. 31-1 at 7, 43. In 2013, Toney transitioned to a separate team that sold products to Costco. Dkt. 31-2, ¶ 4. Following this transition, Toney initially worked as an account manager for certain products sold to Costco stores on the west coast. *Id.* Toney's direct superiors in this role were Daniel Parkhurst and Liz Dicks, who were Clorox's two "customer team leaders" on the Costco team. *Id.* ¶ 3. The customer team leaders were responsible for selling Clorox products to Costco. *Id.* ¶ 5.

In 2016, Clorox promoted Parkhurst to director of sales for products sold to Costco. Dkt. 31-2, ¶¶ 2, 3. In this position, Parkhurst reported directly to Clorox's vice president of strategic accounts, William Matsch. *Id.* ¶ 6.

Upon Parkhurt's promotion, Clorox promoted Toney to Parkhurst's previous position of customer team leader. Dkt. 31-2, ¶ 5. In that role, Toney oversaw sales of Clorox's Brita, Burt's Bees, laundry, and homecare products. *Id.* Dicks oversaw sales of trash, food, litter, and charcoal products. *Id.*

As a customer team leader, Toney had higher sales numbers than Dicks. Dkt. 31-2, ¶ 7. However, because Toney and Dicks were responsible for different categories of products, sales numbers were not the only metric used to evaluate their performance. *Id.* Parkhurst testified that, "although [he] was fully satisfied with [] Toney's performance," "Dicks [was] the stronger performer because she had stronger leadership and

communication skills, better relationships within the Company, and had a stronger ability to take control of a situation and identify solutions." *Id.*

Parkhurst and other sales directors rated Dicks as a "'Rising Talent,' meaning she had potential to move up in the organization." Dkt. 31-2, ¶ 9. Parkhurst classified Toney as possessing "'Critical Talent,' meaning he was viewed as being at the correct level with no plans to move up in the organization." *Id.* However, Matsch states that "[m]ost people seemed to view [] Toney as being 'At-Level,' which means he was working at the correct level, not seen as having the ability to move up in the organization and having opportunities for improvement." Dkt. 31-4, ¶ 8.

In 2021, Parkhurst retired. Dkt. 31-2, ¶ 13. That same year, Clorox reorganized its retail sales department in the United States. Dkt. 31-4, ¶ 2. Matsch was directly involved in the reorganization. *Id.* ¶ 3. During the reorganization, Clorox designated several of its larger customers, including Costco, as "leading-edge retailers." *Id.* ¶ 4. Leading-edge retailers "were customers with whom Clorox wanted to pursue more strategic relationships that would involve and emphasis on long-term strategy, multi-year business plans, and cross-functional collaboration internally across different teams." *Id.* Matsch states that Clorox "wanted to ensure that [it] w[as] putting [its] best talent in positions working with [these] customers." *Id.*

Clorox's vice president and general manager of strategic customers, Gina Kelly, was also involved in the reorganization. Dkt. 31-4, ¶ 5. Kelly discussed with Matsch various "competencies" that she and others at Clorox had identified as being needed by the customer team leaders assigned to leading-edge retailers. *Id.* Kelly testified that,

following the reorganization, customer team leaders were expected to have "a more general-manager mindset that involved not only volume growth but profitability to the company." Dkt. 31-1 at 116. They were also expected to collaborate more with Clorox's "business units," *id.*, which operate "to develop the overall strategy and approach for sales nationwide." Dkt. 31-5, ¶ 5.

Kelly informed Matsch that she and others did not believe that Toney possessed these competencies. Dkt. 31-4, ¶ 5. Kelly believed that Toney was "much more operational in his skill set, versus strategic, needing quite a bit of assistance from his leadership, having a[] mix of experience positive and negative with our business units." Dkt. 31-1 at 120. Kelly thought that Toney was "not the best match for the future competencies we needed to be successful with an important retailer." *Id.*

Matsch agreed. Dkt. 31-4, ¶ 5. He observed that, when attending certain meetings, Parkhurst "would weigh in heavily on decisions." Dkt. 31-4, ¶ 7. He believed that "Toney's performance was passable as long as [] Parkhurst was involved, but there were concerns that he could not handle the [position] without [] Parkhurst's support." *Id.* Matsch testified that "[t]here had always been concerns about [] Toney's ability to think strategically, put together a long-term vision plan, and collaborate internally and with the customer to develop a plan." *Id.* Matsch explained that Toney "was viewed as being more tactical and had a difficult time building internal relationships with the business units." *Id.*

Clorox subsequently discharged Toney. Dkt. 31-4, ¶ 12. Because there were fewer positions remaining in Clorox's retail sales department following the reorganization,

1   Toney was not considered for a different position.[1] Dkt. 31-1 a 115. Clorox promoted
2   Alisha Blischok to replace Toney. Dkt. 31-4, ¶ 11. Blischok is a white female who was
3   35 years old. Dkt. 35 at 23. Before this promotion, Blischok was a sales planning lead for
4   Clorox's Glad products. *Id.* at 88.

5   Toney sued Clorox in Pierce County Superior Court, asserting that Clorox violated
6   WLAD when it discharged him because of his age, sex, and race. Dkt. 1-1, ¶¶ 4.1–4.6.
7   Clorox removed the case to this Court based on diversity jurisdiction. Dkt. 1.

8   Clorox moves for a summary judgment determination that Toney fails to present
9   any evidence indicating that Clorox discharged him because of his age, sex, or race. Dkt.
10  35. Clorox asserts that it discharged Toney because he was no longer qualified for the
11  position following the reorganization. *Id.* at 2. It contends that Toney did not think
12  strategically, failed to take initiative, was too reliant on his supervisor, and did not
13  collaborate well with the business units. *Id.* at 2

14  Toney opposes this motion. Dkt. 34. He asserts that he was doing satisfactory
15  work and that the position of customer team leader did not, in fact, change following the
16  reorganization. *Id.* at 10, 17–18. He next contends that, even if the position changed, he
17  was qualified for it. *Id.* at 21–23. He also argues that he was not dependent on his
18  supervisor and undertook various initiatives on his own. *Id.* at 23–34. He further claims
19  that Clorox fails to present any evidence indicating that Blischok was more qualified than

---

[1] Clorox asserts that it discharged 38 other employees during the reorganization. Dkt. 31 at 1, 8. However, the citation on which Clorox relies for this assertion does not support it. There also appears to be no evidence in the record indicating how many people Clorox discharged during the reorganization and their respective demographics.

him for the position of customer team leader following the reorganization. *Id.* at 25. He finally asserts that Clorox's diversity policies demonstrate that it discharged him because he was a white male in his 60s. *Id.* at 16.

Toney also moves for a partial summary judgment determination that several of Clorox's affirmative defenses fail as a matter of law. Dkt. 32.

The Court addresses the issues in turn.

## II.  DISCUSSION

**A.     Summary Judgment Standard.**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The moving party bears the initial burden of showing that there is no evidence that supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then

must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24. There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. at 248.

**B.     *McDonnell Douglas* Framework under WLAD.**

WLAD prohibits an employer from discharging an employee because of a protected characteristic, including age, sex, and race. RCW 49.60.180(2). A plaintiff alleging discriminatory discharge under WLAD need not rely on direct evidence of discriminatory animus, and may instead "rely on circumstantial, indirect, and inferential evidence to establish discriminatory action." *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cnty.*, 189 Wn.2d 516, 526 (2017). To this end, Washington courts apply "the evidentiary burden-shifting scheme announced in *McDonnell Douglas*.[2]" *Mikkelsen*, 189 Wn.2d at 526.

Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first establish a prima facie case of discriminatory discharge by showing that (1) he belongs to a statutorily protected class, (2) he was discharged by the defendant, (3) he was doing

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

1 satisfactory work, and (4) after his discharge, "the position remained open and the employer continued to seek applicants with qualifications similar to the plaintiff." *Mikkelsen*, 189 Wn.2d at 527 (citing *McDonnell Douglas*, 411 U.S. at 802).

If the plaintiff establishes a prima facie case of discrimination, "the burden shifts to the defendant, who must 'articulate a legitimate, nondiscriminatory reason for the adverse employment action.'" *Mikkelsen*, 189 Wn.2d at 527 (quoting *Scrivener v. Clark College*, 181 Wn.2d 439, 446 (2014)).

Finally, "if the defendant meets this burden, the plaintiff must produce sufficient evidence showing that the defendant's alleged nondiscriminatory reason for the adverse employment action was a pretext." *Mikkelsen*, 189 Wn.2d at 527.

### 1. Toney establishes a prima facie case of discriminatory discharge.

Clorox does not dispute that Toney establishes the first and second elements of a prima facie case of discriminatory discharge—that he belongs to a statutorily protected class and that Clorox discharged him. Clorox instead argues that he cannot establish the remainder of his prima facie case.

Clorox contends that Toney does not raise a fact issue under the third element of his prima facie case "because [he] cannot establish that he was qualified for the new [customer team leader] role." Dkt. 31 at 15. But to satisfy this element, Toney needs to establish only that he "was doing satisfactory work." *Mikkelsen*, 189 Wn.2d at 527. He need not establish that he was qualified for the redefined position of customer team leader. Evidence that Toney was not qualified for this redefined position is more

appropriately analyzed under the second and third steps of the *McDonnell Douglas* framework.

Viewed in the light most favorable to Toney, the evidence indicates that, before the reorganization, he was doing satisfactory work. Toney's direct supervisor, Parkhurst, testified that he and the other sales directors classified Toney as possessing "critical talent," which meant that he was "at the level [he] should be, and [he] [was]n't really considered for the next level up, but [he] [was] critical to the operation of the company." Dkt. 31-1 at 103–104. Toney "had one of the largest sales desks . . . in the Company," Dkt. 31-2, ¶ 7, and Clorox concedes that Toney "had high sales numbers." Dkt. 31 at 2. Considering this evidence, a reasonable jury could find that Toney was doing satisfactory work.

Clorox next asserts that Toney fails to establish the fourth element of his prima facie case insofar as he claims racial discrimination. Clorox assumes that this element requires a plaintiff to show that "similarly situated employees outside the protected class were treated more favorably." Dkt. 31 at 13–14 (citing *Shokri v. Boeing Co.*, 311 F. Supp. 3d 1204, 1211 (W.D. Wash. 2018), *aff'd*, 777 F. App'x 886 (9th Cir. 2019)). Clorox contends that Toney "cannot show a similarly-situated non-white employee who was treated differently" because "[a]ll the employees on the Costco team were white, both before and after the Reorganization." *Id.* at 15.

Clorox incorrectly characterizes this element. The Washington Supreme Court has made clear that "the *McDonnell Douglas* framework does *not* require a plaintiff to prove that she was replaced by a person outside her protected group to establish a prima facie

case of discrimination." *Mikkelsen*, 189 Wn.2d at 532 (emphasis added). Instead, "the proof required is that the employer sought a replacement with qualifications similar to his own, thus demonstrating a continued need for the same services and skills." *Id.* (internal quotation marks omitted) (quoting *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 363 (1988)). Put differently, "a plaintiff need only show that her position was not eliminated." *Mikkelsen*, 189 Wn.2d at 531. Only *after* a plaintiff establishes a prima facie case are the attributes of a successor employee potentially relevant to the second and third steps of the *McDonnell Douglas* framework. *Id.* at 532.

Although Clorox asserts that Toney's position of customer team leader was partially redefined during the reorganization, Clorox does not claim that the position was eliminated. Clorox sought to (and did) replace Toney with Blischok. Viewed in Toney's favor, the evidence indicates that Blischok had qualifications similar to Toney. Toney served in the position of customer team leader since 2016. Dkt. 31-2, ¶ 5; Dkt. 31-3, ¶¶ 3, 4. As explained, Parkhurst and the other sales directors classified Toney as being "critical to the operation of the company," Dkt. 31-1 at 103–104, and Toney produced high sales numbers. Dkt. 31 at 2; Dkt. 31-2, ¶ 7. Blischok, by contrast, never worked as a customer team leader, and Clorox promoted her into the position. Dkt. 35 at 88. Before her promotion, Blischok worked as a "sales planning lead" for Clorox's Glad products. *Id.* Clorox graded that position as a level 27 whereas it graded the customer team leader position as a level 28. *Id.* at 88–89. Considering this evidence, a reasonable jury could find that Blischok had similar—if not less—qualifications than Toney to work as a customer team leader.

For these reasons, Toney establishes a prima facie case of discriminatory discharge under WLAD.

### 2. Clorox articulates a legitimate, nondiscriminatory reason for discharging Toney.

The burden of production now shifts to Clorox to "'articulate a legitimate, nondiscriminatory reason for the adverse employment action.'" *Mikkelsen*, 189 Wn.2d at 527 (quoting *Scrivener*, 181 Wn.2d at 446). "The employer 'need not persuade the court that it was actually motivated by the proffered reasons.'" *Mikkelsen*, 189 Wn.2d at 533 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). "The employer's burden is merely one of *production*, rather than persuasion." *Mikkelsen*, 189 Wn.2d at 533 (emphasis added). "The employer need only introduce 'evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

Clorox asserts that it terminated Toney's employment because, during the reorganization, the role of customer team leader was partially redefined and Toney's superiors "did not believe [he] had the needed skills and acumen to be successful in the re-envisioned role." Dkt. 31 at 16. Matsch testified that, "[d]uring the Reorganization, Costco, Wal-Mart, Sam's Club, Home Depot, Amazon, Target, and Dollar General were designated as" "customers with whom Clorox wanted to pursue more strategic relationships." Dkt. 31-4, ¶ 4. Clorox "wanted to ensure that [it] w[as] putting [its] best talent in positions working with" these customers. *Id.*

Matsch explained that he "do[es] not believe that Mr. Toney's age, race, or sex played any role in the decision to let him go" and that "the decision was based entirely on the view of his skillset and the fact that he did not have the skills" needed for the redefined role. Dkt. 31-4, ¶ 12. Matsch and others involved in the reorganization were concerned with "Toney's ability to think strategically, put together a long-term vision plan, and collaborate internally with the customer to develop a plan." *Id.* ¶ 7. They perceived Toney as being too dependent on his direct supervisor, Parkhurst, who retired during the reorganization and who had previously held Toney's position. Dkt. 31-4, ¶¶ 6–7; Dkt. 31-2, ¶ 5. They also believed that Toney "had a difficult time building internal relationships with the business units." Dkt. 31-4, ¶ 7.

Christopher Scanlon, who worked in a business unit that coordinated with Toney, "found it difficult to work effectively with Mr. Toney because he seemed to have no ambition or strategy to grow Costco business." Dkt. 31-5, ¶ 8. Scanlon expressed that Toney would "offer numerous reasons why something would not work for Costco instead of offering solutions." *Id.*

Matsch testified that Dicks, the other customer team leader for Costco sales, "was highly respected," "had great working relationships with Clorox," "was data driven," was "not afraid to challenge people, and was "able to put together the right people to support her goals for where she wanted to take the customer." Dkt. 31-4, ¶ 10. Overall, Dicks "was more strategic in her approach than [] Toney and continually received sales awards because of it." *Id.* Parkhurst similarly testified that, "[a]lthough [he] was fully satisfied with [] Toney's performance, [he] considered [] Dicks to be the stronger performer

because she had stronger leadership and communication skills, better relationships within the Company, and had a stronger ability to take control of a situation and identify solutions." Dkt. 31-2, ¶ 7.

Blischok, who replaced Toney as the other customer team leader, is a white female who, at the time, was 35 years old. Dkt. 35 at 23. Before this promotion, Blischok was a sales planning lead for Clorox's Glad products. *Id.* at 88. Clorox asserts that Blischok "had diverse experience within the Company, which Sales Leadership saw as a positive, including work as a Sales Planning Manager for various groups." Dkt. 31 at 8.

In sum, Clorox states that it discharged Toney because "[h]e was seen as a [customer team leader] who followed directions instead of thinking strategically, taking initiative, or problem-solving" and "was also viewed as too reliant on his supervisor, who had held [Toney]'s position before him and had recently announced his retirement." Dkt. 31 at 2.

### 3. Toney fails to produce sufficient evidence of pretext.

Because Clorox satisfies its burden of production, Toney "must produce sufficient evidence showing that the defendant's alleged nondiscriminatory reason for the adverse employment action was a pretext." *Mikkelsen*, 189 Wn.2d at 527. Toney "'may satisfy the pretext prong by offering sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is pretextual or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer.'" *Id.* (quoting *Scrivener*, 181 Wn.2d at 446–47).

ORDER - 13

An employee may establish pretext by showing, among other things, "'that the reason has no basis in fact, it was not really a motivating factor for the decision [or] it lacks a temporal connection to the decision or was not a motivating factor in employment decisions for other employees in the same circumstances.'" *Scrivener*, 181 Wn.2d at 447–48 (quoting *Kuyper v. Dep't of Wildlife*, 79 Wn. App. 732, 738–39 (1995)). "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000).[3]

Toney advances numerous theories as to how Clorox's proffered reasons for discharging him are a pretext for discrimination based on his age, sex, and race.

First, Toney claims that a reasonable jury could find that Clorox did not actually redefine the position of customer team leader during the reorganization. Dkt. 34 at 17–18. He acknowledges that "Dicks testified that the job had changed significantly" after the reorganization. *Id.* at 18. Toney nevertheless asserts that, when Dicks "was asked to describe any actual changes, she was unable to articulate any real changes in the job itself." *Id.*

Yet Dicks testified that, following the reorganization, her "involvement with the business unites increased," there was "a lot more strategic meetings with Finance," there was "a lot more analytics against, like profitability," she became "more involved with

---

[3] "Even though almost all of the WLAD's prohibitions predate Title VII's, the ADA's, and the ADEA's, Washington courts still look to federal case law interpreting those statutes to guide our interpretation of the WLAD." *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 491 (2014).

ORDER - 14

shopper marketing and consumer information," and she had "new responsibilities of managing new businesses." Dkt. 35 at 128. Considering this testimony, Toney's assertion that Dicks was unable to articulate any changes to the position of customer team leader following the reorganization is simply wrong. In any event, Toney presents no evidence indicating that Clorox did not honestly intend for the responsibilities of customer team leaders to change following the reorganization, regardless of whether they actually did. *See Stewart*, 207 F.3d at 378. This argument accordingly lacks merit.

Second, Toney asserts that genuine issues of material fact exist as to whether he was qualified for the redefined role of customer team leader following the reorganization. Dkt. 34 at 21–23.  However, "[a]n employee's assertion of good performance to contradict an employer's assertion of poor performance does *not* give rise to a reasonable inference of discrimination." *Crabtree v. Jefferson Cnty. Pub. Hosp. Dist. No. 2*, 20 Wn. App. 2d 493, 510 (2021) (emphasis added). Rather, the plaintiff must set forth "specific and material" facts that "the alleged violations were the actual reason for her termination." *Id.* Whether Toney was actually qualified for the redefined position of customer team leader is of no consequence. Toney must set forth evidence indicating that Clorox did not honestly believe its stated reasons for discharging him, *see Stewart*, 207 F.3d at 378, or that discrimination nevertheless was a substantial factor motivating this decision. *See Mikkelsen*, 189 Wn.2d at 527. Because Toney does not adduce such evidence, this argument also fails.

Third, Toney contends that, prior to this litigation, Clorox "never said he was terminated because he was not a good fit for the 'new' [customer team leader] position."

Dkt. 34 at 12. He asserts that, when he asked Kelly why he was being discharged, "[t]he only response he received from [her] was 'broad considerations.'" *Id.* Toney also cites to a portion of Parkhurst's deposition testimony during which Parkhurst stated: "'I was never really clear as [t]o why they made the decision they made.'" *Id.* (quoting Dkt. 35 at 160). Toney argues that "[t]his raises an inference that the real reason was improper, and was not the one that was asserted by Clorox's attorney after receiving a notice of discrimination." Dkt. 34 at 12.

This argument is not supported by the record. In June 2021, Kelly telephoned Toney and informed him that he was being discharged because, following the reorganization, he was no longer qualified for the position:[4]

> JEFF: Well, I'm definitely taken aback. I've had extremely good performance reviews for every year with the company so I'm just -- number one, I'm just kind of devastated. Can you be a little more specific on why I'm being released?
> GINA: We looked at literally every -- it's a broad model organization, we looked at every person, both a balance of future competencies required, skills needed in the future, in addition to past performance, current skill set, and some people aren't placed as a result of that process. So that's kind of what I can tell you as part of the process.

Dkt. 43-1 at 6.

The fact that, during the course of this litigation, Clorox has provided a more detailed explanation as to why it discharged Toney does not create a reasonable inference of discrimination.

---

[4] Clorox asserts that Toney recorded this conversation without Kelly's consent. Dkt. 42 at 1, 7.

ORDER - 16

Toney's reliance on Parkhurst's testimony is also unpersuasive. Parkhurst's declaration states: "I understand there was a perception within Clorox that I was very involved in managing [] Toney's desk and that I was the driving force behind his sales results." Dkt. 31-2, ¶ 10. Although Parkhurst "did not agree with" this perception and "strongly disagreed with the decision to lay [] Toney off," he "do[es] not believe that the decision was motivated in any way by considerations about [] Toney's race, age, or sex." *Id.* ¶¶ 10, 15. Parkhurst further testified that he "cannot think of any facts supporting [] Toney's belief that his age, race, or sex had anything to do with his separation." *Id.* ¶ 15. Neither Kelly's explanation as to why Clorox discharged Toney nor Parkhurst's perception of this decision indicate that Clorox discharged Toney because of his sex, age, or race.

Fourth, Toney contends that, contrary to Clorox's assertion otherwise, he was not actually overly dependent on Parkhurst in performing his job. Dkt. 34 at 23–24. In support of this argument, Toney cites to his own declaration, wherein he provides a list of "initiatives that [he] took contrary to Parkhurst." Dkt. 34-1, ¶ 2. Whether Toney, on certain occasions, made decisions without relying on Parkhurst does not raise a reasonable inference of pretext. Again, "[a]n employee's assertion of good performance to contradict an employer's assertion of poor performance does *not* give rise to a reasonable inference of discrimination." *Crabtree*, 20 Wn. App. 2d at 510 (emphasis added). To create a fact issue, Toney must present evidence indicating that Clorox did not honestly believe that Toney was overly dependent on Parkhurst in performing his job as a customer team leader. *See Stewart*, 207 F.3d at 378. Toney may do so by demonstrating,

for example, that this reason "has no basis in fact" or that "it was not really a motivating factor for the decision." *Scrivener*, 181 Wn.2d at 447. Toney does not satisfy this burden.

Fifth, Toney asserts that Clorox "has not been able to articulate any actual evidence or even a plausible explanation as to how [] Blischok could have possibly been more qualified for the position." Dkt. 34 at 25. He contends that "[t]he only thing she had over [] Toney as a candidate was that [] Toney is 'non-diverse' in the eyes of Clorox and she, as a female, is in a category that Clorox wants to promote in order to get its [environmental and social governance] score up." *Id.* But when evaluating whether there is evidence of pretext, "[t]he question is not which candidate was more qualified in the abstract, but rather whether the employer's judgment was swayed by something other than permissible criteria." *Hargrave v. Univ. of Washington*, 113 F. Supp. 3d 1085, 1097 (W.D. Wash. 2015). Clorox presents evidence that, before her promotion, Blischok worked in various departments for Clorox, most recently as a sales planning lead for Clorox's Glad products. Dkt. 31-1 at 145. Clorox asserts that it promoted Blischok into the role of customer team leader because it viewed Blischok's "diverse experience within the Company . . . as a positive." Dkt. 31 at 8. Toney presents no evidence indicating that Clorox did not honestly believe that Blischok's experience made her the more appealing employee to fill the role of customer team leader. *See Stewart*, 207 F.3d at 378.

Finally, Toney argues that Clorox's diversity policies establish a fact issue as to whether his "non-diverse status as a white male" was "a substantial factor in the decision to remove him." Dkt. 34 at 16. It is well established that "a diversity policy alone does not establish discrimination. There must be some nexus between the policy and the

specific employment action." *Scrivener*, 181 Wn.2d at 449 n.2; *accord Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004) (stating that an employer's "efforts to eradicate discrimination . . . in its workplace were entirely consistent with the goals and objective of our civil rights statutes generally"). Toney acknowledges that Kelly "den[ied], unequivocally, that 'privilege' was part of the consideration" to discharge him. Dkt. 34 at 15. He nevertheless contends that a fact issue exists as to whether Toney's sex, age, or race informed this decision based on the following testimony from Kelly:

> Q. Was any consideration given to sex, age or race of employees as to retention in your group when you were deciding who was going to stay and who was going to go?
> A. Not to my recollection.

Dkt. 35 at 21.

Kelly's response indicates merely that Toney's sex, age, and race played no role in Clorox's decision to discharge him. It does not indicate the opposite.

Toney also contends that testimony from Jacquie Baker, another Clorox employee involved in the decision to discharge him, indicates that this decision was informed by his sex, age, or race. Dkt. 34 at 15. Baker testified that Clorox's diversity policy (known as the IGNITE strategy) is "our strategy that guides our entire company." Dkt. 35 at 120. Baker did not testify that the IGNITE strategy played any role in Clorox's specific decision to discharge Toney. This testimony is therefore of no aid to Toney.[5]

---

[5] Toney does not dispute that Blischok, like himself, is white. *See* Dkt. 35 at 23. For this reason, too, Toney fails to raise a fact issue as to whether Clorox discharged him because of his race.

On this record, a reasonable jury would be forced to speculate as to whether Clorox discharged Toney because of his sex, age, or race. "'Speculation and belief are insufficient to create a fact issue as to pretext. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that he has been discriminated against.'" *Hines v. Todd Pac. Shipyards Corp.*, 127 Wn. App. 356, 372 (2005) (quoting *McKey v. Occidental Chemical Corp.*, 956 F. Supp. 1313, 1319 (S.D. Tex. 1997)). Clorox's motion for summary judgment is accordingly granted and Toney's discriminatory discharge claim is dismissed with prejudice.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Clorox's motion for summary judgment, Dkt. 31, is **GRANTED**. Toney's claim of discriminatory discharge is **DISMISSED with prejudice**. Toney's motion for partial summary judgment, Dkt. 32, is **DENIED as moot**. Clorox's motions in limine, Dkt. 44, are also **DENIED as moot**.

The Clerk shall enter a **JUDGMENT** and close the case.

Dated this 26th day of March, 2024.

*[signature]*
BENJAMIN H. SETTLE
United States District Judge

---

Toney also does not cite any evidence showing the demographics of every other employee discharged by Clorox during the reorganization. The Court is accordingly unable to discern whether the demographics of those employees creates a reasonable inference that Clorox discharged Toney because of his sex, age, or race.